Thank you. Good afternoon. Please be seated. Okay, our last case this afternoon is Waterhouse v. Robinson and State Farm Mutual. That's case number 4-160-433 for the appellant. We have Timothy Shea for the appellee, Barbara Murdo. Correct? All right, you may proceed. No, I'm rightful. I represent Mr. Robinson in the case below. Okay. So I'm not making an argument. I filed a brief and I'm not making an argument. I just wasn't sure if the arguments would watch. Okay, excellent. So you know who I am. Thank you for identifying yourself. I appreciate it. You may proceed. Good afternoon. May it please the court and counsel. As I was looking at the panel today, I note that two of the three of you were present for the Stevens case, which we rely upon. Justice Appleton was a dissent. Justice Turner was in favor of the plaintiff. And Justice Polk was not present. I know it was written by Justice Steigman. So the question here is can an insurance company lay the weeds for 20 months while asserting a claim for subrogation, then at the time that the case is settled saying it's waiving that right to subrogation, then using that as a set-off in the UIM claim without having done anything to participate in the creation of the fund, without having met the requirements of Tenney v. American Family and sending the appropriate letter, and basically arguing that a fund was not created and therefore Tenney does not apply or the Common Fund Doctrine doesn't apply. Now, Justice Appleton, I note that in the Stevens case that you were dissent and you indicated that it was your belief that no fund was created simply by virtue of the settlement of the underlying claim against the third party. The Stevens court indicated that that was the creation of the fund, that it allowed a set-off against the underinsured motorist benefits and therefore met step two of the Tenney analysis, that a fund was in fact created. And that's the same argument that's been made by the appellee in this case and that Judge Diamond considered was that no fund was created. In essence, even though State Farm did not participate in the underlying litigation, did not do anything on its own to attempt to secure the payment of the third party claim, and we're talking about identical insurance companies here, State Farm and State Farm both with the primary and the underinsured motorist claim. They simply waited in the weeds until the case got settled, and at that time they wrote a letter saying, we are waiving our rights of segregation and we do not believe we owe you, and this is really about $9,000, because the lien was $27,000 and State Farm wanted to avoid paying the $9,000 as attorney's fees and as pro rata share of costs by simply saying at the last minute, at the 11th hour, we're not going to participate in this, we don't have a lien, and the court doesn't have any jurisdiction, because this is in essence an arbitration matter that's not before the court. And very similar to what happened in the Stevens decision, that argument did not hold water in front of two of the three justices that wrote that decision. And we feel that it's very much a similar situation. The only difference perhaps is in the Stevens case, apparently from the face, or at least reviewing the case, somebody was very seriously injured, well in excess of $100,000 for two policies. So Plaintiff's attorney Beeman was able, and I'm assuming he was able to secure this without ever filing suit, the underlying $50,000 third party policy. Then he asked the country mutual to waive its segregation rights, which I'm assuming waived and he set off for anything because of the injuries to the plaintiff. And what happened was the country wrote a check for $50,000 less the amount of the medical payments coverage, saying that there was nothing that the plaintiff's attorney did to create the fund, and certainly didn't do anything under Tenney to require or to remove the plaintiff's attorney from creating the fund. Mr. Shea, just to clarify, the amount of money at issue here is essentially one-third of the $27,000 in medicals? Absolutely. Yes, $27,000 and some change is what the medical payments lien is. And at the time of this case before the trial court, it was clear that an underinsured claim was going to be pursued, but at that time the trial court didn't know what, if any, underinsurance award might be given. Is that right? And if so, why is it right? Why wouldn't we wait until we know for sure what the underinsured claim is going to amount to? That's the argument, and they're saying it's speculation, because the case may not be in value in excess of the $77,000. But the fact of the matter is, this was a person who was injured and had surgery to the neck, the medical specialists were high, he lost wages. It does have value, arguably, in excess of $100,000, similar to what the Stevens case did. Now, the difference is, in this underlying case here that we're before, there was an issue as far as liability. Mr. Folt defended State Farms Insure, who was the third party, and there was an argument, it was a pedestrian vehicular accident, and there was an issue as to whether the pedestrian even got hit by the vehicle. And that was the basis of the dispute early on. Depositions were taken, and ultimately, State Farm, with the third party, tendered $50,000. By that time, $27,000 had been paid by State Farm, so it was right under the Common Fund Doctrine to adjudicate that lien, and simply by saying at the last minute, the $11. But you're asking the court to adjudicate a lien on money that may not exist. Sure, sure. I'm saying, why wouldn't this court just say, there's no point in adjudicating a lien yet, but once the underinsured amount is established, then you adjudicate the lien, and then you may very well prevail, or State Farm may prevail. Because jurisdiction of the matter would be shifted from the trial court to an arbitration panel to decide that. The trial court has jurisdiction to adjudicate under the Common Fund Doctrine. The issue, or at least the point that was made by Judge Dimon was, no fund was created, therefore there's nothing to adjudicate. That's the argument that they made there. You in the Stevens case found that a fund had been created, and I don't believe we have to wait until the evaluation, or at least the tender, or the award in an arbitration hearing at some point in time to adjudicate the $27,000. Well, you can help me out here. The underinsured claim would go to arbitration, as I understand it. Correct. Well, does the arbitrator just decide the amount, or does the arbitrator take the next step and say, here's the amount, and I'm also going to adjudicate liens? I don't think the arbitrator does that. No, they don't adjudicate liens. Well, to me, that it makes sense, and I want you to straighten me out if I'm wrong here, is that once the underinsured amount is established, if any, that's when you would go to court and ask to adjudicate the liens, and you might very well prevail then, based upon the cases you cited. Sure. The Stevens case, I think, is what you're holding on to, the fact that the $100,000 was ultimately tendered, but the fact of the matter is, it's the timing of the adjudication. I understand what you're saying. Do we have to wait to find out if an award is greater than $77,000 and some change? But I don't believe that's necessary, because if State Farm did not say, we're waiving the rights, and if Judge Dimon did not buy that argument, then it would be a simple adjudication of the lien with the trial court prior to any further UIM proceedings. What State Farm did is it simply said at the last minute, without creating the fund, we just want to settle. We don't. Even though you did everything, Shay, we don't believe that we owe you $9,000. We're going to throw this little trick card down, and we're going to save ourselves $9,000. That's the difference here, and that's consistent. Our argument is absolutely consistent with what you said, what you did in Stevens. Even though it was used as a set-off, it was the trial court that had the right to adjudicate the lien. There was no arbitration here because Country Mutual tendered the $100,000, but nevertheless, jurisdiction was with the trial court in the Stevens case. In Stevens, the amount of under-insurance coverage, not coverage, but compensation, I guess that's really not appropriate. Coverage is appropriate. No, that was determined. Yes. Well, that's not determined here. Well, it wasn't determined. It was tendered. It was tendered. Well, it's the same thing, is it not? So let me ask you this question, following through with your argument. You're kind of turning the table. I'm sorry. No, I'm okay. No, it's okay. I'm trying to get you to help me understand. So following through with your suggested argument, if the award in the UIM claim exceeds $77,000 after all set-offs, or I should say, actually, $100,000 is available. There's a $50,000 set-off in the monetary policy, and then there's arguably a set-off, which is what the arbitration panel would argue. It's entitled to the set-offs pursuant to the policy. Well, at that time, the policy says, under the UIM policy, that they're entitled to a set-off of the medical payment that's covered. So the only way to reduce that amount is to do it with the trial court in the underlying claim itself, because the language in the policy of State Farm doesn't allow, because the Common Fund Doctrine is a quasi-contractual basis, and even though it may be inconsistent with the UIM policy itself, the courts have agreed that it is appropriate when the attorney creates the fund. So the timing is important as to who adjudicates it, and it has to be adjudicated with the trial court, because quite frankly, I'm not even sure that the arbitration panel would have the ability to adjudicate under the Common Fund Doctrine when, looking at the language of the policy itself, they would get a set-off of all amounts paid under the medical payments coverage. And that's what we're trying to say. We're trying to say, you can't, at the 11th hour, withdraw your demand for subrogation and avoid the Common Fund Doctrine. That's what's going on right here. That's our argument. I understand your point, because they tendered all the money, and we still have a prospective claim, which may or may not be awarded by an arbitration panel. But I don't believe the arbitration panel has the ability to adjudicate the Common Fund Doctrine argument, unless your argument, what you're trying to say is, okay, the award's given, the deduction's set off, you've got to go back to the trial court. But the trial court has lost jurisdiction at that point, and it would have to be filed under a miscellaneous remedies provision, I'm assuming. That's actually what I'm trying to ask. Sure. But you're saying that would not be proper? I don't think we're required to do that. I think jurisdiction lies with Judge Diamond. Well, let's look at this from the defendant, the tortfeasor's perspective. Tortfeasor's paid and says, hey, I don't care anything about attorney fees, liens, and all that. I'm done with this. The court dismissed the defendant out. What was wrong with that? Why shouldn't the defendant, Tortfeasor, be out at the litigation at this point? Well, they were dismissed. Right. Right. I don't see anything wrong with him being dismissed, but because this matter was adjudicated in front of the trial court, you have the power to send it back to the trial court. And it doesn't affect the rights or obligations of the third-party defendant. But what it simply does is it affects the right of State Farm, which is either, if you can look at the third party, or you can look at the UIM carrier. But the wrong decision to restate was made by Judge Diamond, who had jurisdiction, who refused to exercise jurisdiction, because he bought the argument of State Farm that this really is a contractual nature. It's not before the court. But more importantly, he said, we did not create a fund, which is absolutely inconsistent with your ruling in Stevens. A fund was created. I assume you cited Stevens, too. I cited Stevens. I screamed Stevens. I beat on my chest Stevens. I did everything I could possibly do, but he had difficulty wrapping Stevens around the facts as we have them here. Because Stevens says a fund was created. He made a decision absolutely contrary to what Stevens said. And what he did is he bought the argument of a case that was cited by the defendant, which is the case where there was a $5,000 medical pay that had been made. Is that Johnson? Yeah, Johnson. What happened was it's a UM claim, not a UIM claim. So $5,000 was paid by the carrier, the UM carrier, and an arbitration award was entered for X amount of dollars on the UM claim. And the attorney said, oh, by the way, we want the common fund doctrine. That's an entirely different case. That's a case where it's UM versus UIM. It is appropriate to have a set-off under Johnson because it's not the same case that we have here. The closest case that we have is the Stevens case, which is a 4th District appellate decision. So, I mean, our argument stems from the fact, number one, a fund was created consistent with your ruling on Stevens. Number two, under the common fund doctrine, we created the fund. There was no participation by State Farm, the med pay provider, or the UIM provider. They lay in the weeds for 20 months. They come out with a letter at the very end to avoid the common fund doctrine saying, we withdraw our segregation interest and we're going to use it as a set-off. Well, wouldn't it be true, Mr. Shea, that if they had not waived their segregation, clearly they would not have been able to argue that a fund wasn't created. Right. Because you clearly would have created the only fund available. And so then they would have had to pay their one-third without any question. Absolutely. So if there's a wrinkle in the Stevens versus case that we have here, it is at no point in time did country mutual waive its segregation. So the question was, was Beeman asking for them to waive their segregation lien because the value of the claim far exceeded $100,000 and the equity of the situation laid with the insured that he should not have a set-off? Because that's the only thing that makes sense. And I wasn't present when this was heard before you. But that's the only thing that makes sense is what the waiver meant. He meant a waiver as far as getting any sort of set-off or collectability against the underinsured motorist provision. But if there is any wrinkle at all between the Stevens and the case at bar, it does a letter at the 11th hour that says, we hereby waive our segregation lien because that led off State Farm from having to pay pursuant to the Common Fund Act. Anything else? I don't say anything, but you will have rebuttal if you'd like it. By the way, did I answer your question adequately? I think you must have posed an answer to yourself. That's what I was doing. I was rhetorically pondering how it will. You'll have rebuttal. It's nice to see you again. Good to see you. Ms. Murdo. May it please the Court. Counsel, my name is Barbara Murdo, and I represent the respondent, State Farm. In this case, the trial court properly found that State Farm had waived any potential claim that it could have made against plaintiff's tort settlement. Plaintiff settled his tort claims against the defendant, George Robinson, for $50,000, and State Farm, as the defendant's insurer, has been ordered to write a check in the full amount of $50,000 payable only to plaintiff and his attorneys. State Farm will not receive any funds from the Robinson settlement. Therefore, that tort settlement is not a common fund as between plaintiff and State Farm. The Robinson settlement is a fund that benefits only plaintiff and his attorneys. All of the cases cited by plaintiff recognize that the common fund doctrine is based in equity and does not apply unless the non-client who is asked to pay fees to the attorney actually benefits or recovers something from the fund that was created solely by the attorney's efforts. State Farm has not benefited from the plaintiff's tort settlement. Therefore, the common fund does not apply to the tort settlement. As it stands, plaintiff has full benefit of the $50,000 tort settlement from Mr. Robinson's policy, plus the additional $27,000 and change in medical payments benefits that State Farm already has paid from plaintiff's own policy. Whether and to what extent State Farm might be able to avoid paying those same medical expenses twice in the uninsured motorist arbitration is purely speculative at this point. The underinsured motorist coverage arbitration has not occurred. Therefore, it has not been established that plaintiff is entitled to any further recovery. I'm not following what you're saying. What do you mean pay it? Pay the twice? They're not asking for paid twice. They're asking for one-third of the medicals. Right. The medical payments benefits would be – there can't be a duplication of those benefits again under the uninsured motorist coverage. Under his theory. Well, I'm not certain about that because where is this $9,000 and something in fees supposed to come from? We've already been ordered to pay $50,000 only to plaintiff and his counsel. We're not getting the benefit of anything. Okay, suppose he didn't pursue the $50,000 against the defendant. Then where would you be? You'd be out to $27,000, right? Unless you wanted to go against the defendant. That's correct, unless State Farm. So he created that fund, right? Where did it come from if he didn't create it? Well, it's a fund, but it's not a common fund as between plaintiff and State Farm because State Farm is not benefiting from that fund at all. We're not recovering the $27,000 in medical payments from that. Yeah, you are because you wouldn't have recovered anything if he hadn't pursued the $50,000 against the tort. But State Farm is not getting it. We've paid $27,000 in excess of $27,000 directly to his medical providers. Right. State Farm is not getting any of that money back. State Farm is writing another check for $50,000, therefore paying $77,000 and not recovering anything as we currently stand. Well, in the UIM proceeding, in the arbitration there, you plan to ask for a set-off of the $27,000, don't you? Yes. So the plaintiff would only get $23,000 of that $50,000? Assuming that the plaintiff is entitled to recover anything further at all. If it's determined in the UIM proceeding that he's not entitled to anything beyond the $50,000 that he's already received from the tort fees, then he keeps the $50,000 and he keeps the $27,000 he already has and State Farm gets nothing. So it's entirely possible State Farm will never get a credit for that $27,000. We've waived it against the tort settlement. And it's possible that there may not be any further benefits in the underinsured motorist arbitration for State Farm to take a future credit against. We just don't know. It's premature to make that call right now because the arbitration hasn't occurred. What about Mr. Shea's argument that the trial court has lost jurisdiction once we issue our decision here? Well, the only thing that the trial court had jurisdiction over was the tort settlement. What happens in the underinsured motorist arbitration is a separate proceeding. And if there were some dispute about credits and setoffs in the underinsured motorist arbitration, that would appropriately be resolved by a declaratory judgment action. After the underinsured motorist arbitration has occurred. Is that a part of a new suit? It's not a post-judgment matter that could be taken up with the trial court? That is correct. Which is correct? That it is not – it would be a separate proceeding, a miscellaneous remedies proceeding, a declaratory judgment on the credits and setoffs. I don't know. Is that typically how it works? Yes. In these kinds of cases? Yes. Because the issues in the underinsured motorist coverage arbitration are contractual issues. The contract between plaintiff and his own insurance company was not an issue in the tort suit. That was solely a personal injury action between plaintiff and the tort feeser. Contractual issues between Mr. Waterhouse and his own insurer have to be resolved separately from that. You can't join those issues in the tort suit. The case law that plaintiff relies upon is distinguishable in that in each case, the insurer was trying to have it both ways. By simultaneously seeking the protection of its recovery from a third party in the tort suit, but trying to avoid paying fees to the plaintiff's counsel. That's not the case here. There is no third party involved. State Farm has waived any potential recovery from the tort suit, and the trial court has ordered that State Farm not be included as a payee on the settlement draft. Plaintiff argues that State Farm didn't send a Tenney letter at the outset of the case. The problem with that argument is that we never reach the issue of whether State Farm's actions were sufficient to prevent otherwise proper application of the common fund doctrine, because plaintiff hasn't established that the common fund doctrine applies in the first place. The Tenney letter is only necessary when there actually is a common fund out of which the client and non-client are recovering. There isn't one here. Mr. Waterhouse, again, is getting the entirety of Mr. Robinson's liability policy, and plaintiff's attorney is taking a one-third fee on the entire settlement. There is no unjust enrichment to State Farm. In this case, it's plaintiff who appears to be trying to have it both ways and to receive an unjust enrichment. Plaintiff is trying to keep the full $50,000 of defendant's liability policy while simultaneously seeking an order which reduces a potential credit for medical payments benefits in the future underinsured motorist arbitration. Based on deductions, though, for costs and attorney's fees that he incurred in the tort suit, the trial court properly rejected that attempt, not only because it's inequitable, but also because all issues regarding the future underinsured motorist coverage arbitration are premature and were not properly before the trial court. What if the arbitrator found, and I don't know how this works, so you need to look it up, what if the arbitrator found the plaintiff was damaged over and above, like say an additional $100,000, which is more than the UIM? Yes. Can State Farm set off their $27,000 then? Because there's not enough fund there to compensate the plaintiff for their injuries. Yes. The limit of coverage would be $100,000. And then there would be a reduction for the $50,000 in liability policy before the $27,000. Right. I'm just talking about, so I understand that. So maybe I need to say this. Let's say the arbitrator finds the plaintiff was damaged in the amount of $150,000. So there's $100,000 left of damages once you deduct the $50,000. But there's only $50,000 in UIM coverage, right? Correct. So the plaintiff is not going to be fully compensated for their injuries. Or does the arbitrator just decide, well, the injuries are at least an additional $50,000? The arbitrator decides falls in amount. Any issues as to contractual set-offs and credits or any dispute about the limits of the coverage, those are contractual issues that would not be before the arbitrator. That is something that would have to be resolved in a separate declaratory judgment. Okay. So the arbitrator decides based on what he has in front of him the total amount of injury and doesn't worry about what the coverage is. Exactly. I'd like to discuss Stevens briefly. This plaintiff places a lot of reliance on it, but that case does not support the argument that Plaintiff's Counsel has created a fund from which State Farm has benefited due to the differences in facts and the procedural posture of that case. In Stevens, there were two different insurers involved, and the plaintiff's insurer actually asserted a lien against the recovery from the tortfeasor's insurer that it refused to weigh. And the plaintiff's insurer was included as a payee on the settlement check. In addition, the separate underinsured motorist claim asserted by the plaintiff already had been resolved for the policy limit. The majority in Stevens concluded that the plaintiff's insurer had benefited from the tort settlement created by the plaintiff's counsel from the other insurer because the plaintiff's insurer otherwise would have had to been required to expend significant amounts to recover its medical payments from the third party. The majority never reached the issue of whether the medical payments were reimbursed from the underinsured motorist settlement rather than the tort settlement. Here, in contrast, State Farm didn't assert a lien against the tort settlement, expressly waived any potential claim that it could have made against that settlement, and is not receiving any funds from the settlement itself. In addition, there's been no determination that plaintiff is entitled to underinsured motorist coverage benefits in any amount from which State Farm could potentially avoid double payment of medical payments in the future by doing the offset against the underinsured motorist coverage award. In any event, as Justice Appleton, in his dissent in Stevens, rejected the idea that the common fund doctrine would apply to a set off of medical payments benefits against underinsured motorist coverage benefits paid by the same insurer, which is the situation we have here, since those payments arise only by operation of the contract as opposed to being the result of creation of a fund by the plaintiff's counsel. Well, counsel, I'm going to go back to where I was with the question with you 10 minutes ago, probably. If Mr. Shea, on behalf of his client, had not pursued the $50,000 against the defendant tort fees, you would not be able to recover your $27,000 in medicals at all. That's correct, isn't it? You'd be out $27,000. Absolutely. Okay. Now, you're going to possibly be able to recover your $27,000 because of what he did. And all he's saying is, if you had to go to the tort fees to get your $27,000 back, you're going to have to pay attorney fees. Now, I don't know if it would have been one-third. Now, you're wanting to use his work to get the whole $27,000 back without paying any attorney fees. And he's saying, no, he created the common fund, so you've got to pay your one-third. What is logically wrong with that, and why does that not fit into what Stephen's court's holding was? Yes. If there had not been a settlement with the tort fees, if State Farm had just simply paid its medical payments benefits under Mr. Waterhouse's policy, and then we proceeded to an uninsured or underinsured motorist coverage arbitration, it's simply a matter of applying the policy language, the non-duplication of benefits provision. But the Stephen's court said that doesn't govern, that doesn't trump the common fund doctrine. Actually, my reading of this, and please correct me, but my reading of the Stephen's decisions was that you didn't reach that issue. And that's it. Well, how about the third district case that I think was written by Justice Holdridge? Didn't they reach that issue, and didn't we cite them in Stephen's? Well, I apologize. I don't have a copy of the opinion here at the… I don't know if I've got a copy, but I'll keep talking and I'll look for it. No, I don't have it. You said second district? I should have heard it. At page 802 of the Stephen's opinion, the majority indicates, we declined to address the merits of Country Mutual's argument that the common fund doctrine does not apply because the medical payments provided to Stephen's were reimbursed from its underinsured motorist coverage  So, the majority did not reach the issue of whether… The majority appears to have concluded that the plaintiffs insured did, in fact, recover from the tort settlement. But that is clearly not the case here because the trial court has ordered that the settlement check in the tort case be made payable only to plaintiff and his attorneys. That's why Stephen's is not instructed here. Because this opinion assumes that there is actually recovery from the tort settlement, but that's not what's happening here. In short, the January 27, 2014 letter that plaintiff bases their claim of lien on was ineffective to assert a lien against plaintiff's tort settlement. In any event, State Farm waived any claim that it potentially could have asserted against the tort settlement. Therefore, there was no lien for the court to adjudicate in the context… Why did they do that? Why did State Farm do that? Why did they waive their lien? Yeah. Well, I mean, it's a benefit to the insured. He gets all of his money up front and then we can, you know, we'll see if he's entitled to anything more. But for now, he can have his full recovery and we'll just make that call later. They did it out of benevolence and beneficence. They treat their insured well. The trial court correctly denied the existence of a lien and ordered the tort defendant to produce a settlement draft naming only plaintiff and his attorneys as payees. In obtaining that tort settlement, plaintiff's counsel simply has not created a fund that has benefited or will benefit State Farm. Plaintiff's separate underinsured motorist coverage benefits under his own insurance policy with State Farm is subject to arbitration, has not yet been resolved, was not properly before the trial court for adjudication. The trial court's denial of plaintiff's motion to adjudicate liens as to State Farm was correct and we ask that it be affirmed. Okay. Thank you very much. Any rebuttal? Yes. Benevolent Insurance Company is an oxymoron. Let's start off with that premise. They did it to avoid $9,000. It was a procedural last-minute run to avoid the Common Fund Doctrine. I want to go over some of the things that she talked about. First of all, she placed some significance on Stephen's decision because we had two different insurance companies. There's a thing called a Chinese wall in Insurance Law 101 that says if the third party is insured by Company A and the UIM is also insured by Company A, the adjusters are supposed to be different and not talking to each other. And that would also go in tune with the MedPay provision of the plaintiff's insurance company. So whether it's Company A and Company B or two Company As, the law applies the same. Simply because they're the same insurance company doesn't mean that one adjuster can adjust all claims. You're not supposed to do that. That's clear. I also want to go over what she said, and it all really starts off with this because that's their primary argument. No benefit was created for the defendant, or excuse me, for State Farm. And the fact of the matter is this is directly addressed under two theories. They had the benefit by which they could collect the $27,000 subject to the Common Fund Doctrine in the first $50,000. They also got a benefit, and I'm going to read straight from this case. Further country was able to limit its liability by deducting the $50,000 Common Fund created by Beeman from Stephen's subsequent underinsured motorist claim. There's a $100,000 policy UIN and State Farm has. $50,000 of it is deducted right off the bat due to the efforts of Shane Associates. That is a benefit that they recovered. So you can look at two benefits, the potentiality of getting the $27,000 from the $50,000 tendered in the third party's State Farm, or they're deducting $50,000 that we were able to obtain from the tortfeasor's insurance policy. Under either scenario, they get a benefit. And that was specifically addressed in the argument of Stephen's. Now, there is no duplication of benefits here. Either the medical benefits, med pay, is reimbursed via the first $50,000 or it's a set off in the second $50,000 if they would have played their cards right. They didn't play their cards right because they sent no tenny letter. There's no argument about that. No tenny letter. Nothing was done. And even the court here, and I know you're familiar with this, said, but for Beeman's actions, the country would have expended substantial administrative and legal resources to recover the $20,000 it paid to Stephen's under Section 9A of the Segregation Agreement. So they don't have to pay a dime to get their money back, even though they benefited from the efforts of Che and Associates. And that's not right. And that's not consistent with the Common Fund Doctrine. There is no duplication that could happen under any scenario. One of you asked, how does this typically work? It typically works that with the primary policy, the court exercises its jurisdiction to adjudicate means, and one of them is the Common Fund Doctrine. That's how it works. And that's what we did. We addressed it with the court to adjudicate the Common Fund Doctrine, and it found incorrectly that no benefit, no fund, was created for State Farm for the UIM carrier. And that's not right. And that's inconsistent with this court's very decision. Does that mean I'm out of time? You're actually having total dread, but the red light is on. Okay. I really think that's about it. The fact of the matter is, thank you very much. It's great to see the two of you. I hope you're all doing well. Thanks. Thanks to both of you. The case is submitted, and the court stands in recess until further call.